Granger, C. J.
What is the- true-construction, of the agreement of November 16, 1872, upon the point in dispute? It-was formally and carefully drawn. The stipulations touching the- mining of the lessor’s coal, and • the payment therefor by the lessee, demonstrate’ that the draughtsman understood precision of statement and legal *566 •phraseology, ; Fi'om.• the beginning, down to the last two 'clauses of the instrument, all is clear, precise and technical; giving rights and imposing obligations that were “ for the .term of till Coal is mined.” What coal? In the absence of any indication of a different meaning — the coal in the leased land. 'But-.note' the omission of u“the” before “coal.” .After'very completely providing for said rights and obligations the draughtsman added two clauses.
One of. these’ gives permission to-the lessee to remove all ¡.machinery and.fixtures “provided no unnecessary damage is-done to.;t'he 'land and fall accounts between the1 parties .hereto, are.. settled and-paid, and thus terminate this contract.” ’ ' 1’
If the preceding stipulations had, shown the work of a 5“.prentice’hand ” we would .attach less' importance to the ..words.if‘before the term of this agreement is expired the -coah shall be‘exhausted from said land.” But the words of -a skilled- and :careful writer demand attention.-. He began this clause with words plainly.indicating that “the term of ..this .agreement woyld 'not necessarily expire when “fhe -eoal'shoidd; be.'eyhafisted from, said .land.” , ; .. , . ■■ ,
! 'M hislsolb'F.uitpCseihad'béeú .ip insert permissiqn.for the ¿removal' byothe.'lessde’- of its, machinery and fixtures, such a (.writfer.'’WOjuld hay,e.;penned “on -the termination of this Je'ase,” or Nwhemall-the coal .shall be .exhausted from said land then the party of the second part, &c.” ' Moreover, after .the, words “ the coal'should be exhausted from said land,” he adds, “afid none remains to'be mined.” If these last six words refer to the coal in the leased lands the writer fell into a tautplogy-mot exhibited by- him' fin the preceding parts of the papery.-:.When he wrpt,e “‘'an.d none,remains to be mined,” was he thinking of the lessee’s coal in its adjoining tracts?;- Did.-the words; “.till Coal is mined ” include í/hzícóaj?’ ' '
In the filial clause he wrote, “ and it is also agreed that for any ¡coal that the party of the second part shall remove fro.m other, lands through, over, or-above said described *567 land, the said second party shall have all the rights now possessed by the party of the first part.”
The defendant in error claims that this clause should be construed as if the words “during the continuance of this lease” were added to it.
But, if the writer’s intent was to grant a permit for that time, would he not have used the well-known phrase “ and during the term of this agreement said second party may remove coal from other lands through, over, or above said described land.” It is shorter by almost one half than the clause placed by him in the contract.
Moreover, the form of the contract clause clearly shows that the writer knew of the lessee’s purpose to so remove coal from other lands; nay, more, it recognizes its right to do so without the lessor’s permission, and implies a purpose to grant something in addition to such right. As matter of law, without any such permit, the lessee could lawfully remove coal from its other lands during the continuance of the lease. He who rents a farm adjoining his own, may, during the lease, haul the produce of his own land across the leased land without any license from his landlord.
This clause, in its form, recognizes this rule of law; recognizes the purpose of the lessee to so remove coal; and then proceeds to grant to it for the purpose of such removal, “ all the rights now possessed by the party of the first part.”
Among those rights was the grant in the Whitman lease, covering 106 acres out of the 175 acres described in the contract. The contracting parties acted with knowledge of that lease and its stipulations.
A well established rule requires the court to give effect to every word in an instrument if it can reasonably be done. In this case the common pleas treated the agreement as containing two distinct parts: the first a sale of the coal in the 175 acres with rights and obligations ending with the exhausting of that coal and payment for it at the stipulated' price; the second an assignment to the Wadsworth Company, for the purpose of removing the coal from its adjoining lands, of all the rights then possessed by the Silver Creek Mining *568 and Railway Company. The Whitman lease valued those rights in the 106 acres of that tract at the small sum of five dollars per year. This fairly indicates what Whitman and the Silver Creek Company considered the concession of such rights was worth to the land owner in addition to the royalty paid for the coal in the land across.which, the rights were to be used. The Whitman lease was dated September 3, 1872, (less than three months before the agreement in question). Under it the Silver Creek Company was to pay a royalty of only seventeen cents per ton of 2240 pounds, and was bound to mine only about 1200 tons annually, making a rental of $200.
On November 16th, 1872, the Wadsworth Company took this lease and 69 acres more, and agreed to pay to the. Silver Creek Company a royalty of forty cents for each ton of 2150 pounds, and to mine at least 20,000 tons annually. It also .consented to most stringent stipulations as to time and manner of payments: it agreed to make “ advance ” payments and to so limit its right to apply those payments upon coal subsequently mined, that it was quite possible a material part of the payments so advanced would be wholly lost to it.
This assent to such terms, given with a knowledge of the moderate terms of the Whitman lease, plainly indicates, as we think, a controlling inducement more important than the mere right to mine coal in the 175 acres,, with the opportunity while so mining to take coal from their adjoining lands. The quantity to be taken each year from the 175 acres left, small time or opportunity for removing other coal “ during the lease.”
The district court adopted a construction which gives no effect to the opening words of the clause next preceding the final clause; which ignores the form of the final clause; which introduces into it words not there by necessary implication, to wif, “ during the continuance of this lease; ” and does not give to the Wadsworth Company “ all the rights” then “ possessed ” by the Silver Creek Company.
It seems to us that the. construction adopted by the com *569 mon pleas is the true one. It gives to each word its ordinary meaning. The final clause expressly transfers to the Wads-worth Company all the rights then possessed by the other company for the purpose of removing coal from other, lands. No words of limitation are there. No court has a right to interpolate them without strong reason, unless they belong there by necessary implication. In this paper we find no such necessity. On the contrary, a careful, inspection of the paper itself, in the light afforded by the then situation of the parties as disclosed by the record, satisfies. us that they did not intend that any such words of limitation should be inserted, or implied.
The Silver Creek Company claims that if such is the true construction of the agreement, it is entitled to some $2,000 yearly as a rent. But it seems to us plain that, this rental is based upon the obligation to mine and remove coal, in and from the 175 acres; it is a royalty for coal so. actually mined and removed from said lands; or payable because of a failure by the Wadsworth Company to fulfil its covenant to mine the stipulated quantity. So soon as the minable coal in the 175 acres was exhausted that covenant ceased to operate; its obligation was fully performed. Hence no such rental is due to the Silver Creek Company. It does not suffer. It seems to us evident that it. prudently stipulated for, and, when the $7,594.52 shall have been collected, will have received ample compensation for all the rights granted.
The judgment of the district court is. reversed, and that of the common pleas affirmed.